**Nos. 2017-2289, -2351**

# United States Court of Appeals for the Federal Circuit

CISCO SYSTEMS, INC.,

*Appellant,*

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee,*

ARISTA NETWORKS, INC.,

*Intervenor.*

ARISTA NETWORKS, INC.,

*Appellant,*

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee,*

CISCO SYSTEMS, INC.,

*Intervenor.*

Appeal from the United States International Trade Commission, Investigation No. 337-TA-945.

**APPELLANT ARISTA NETWORKS, INC.'S
NONCONFIDENTIAL REPLY REGARDING
EMERGENCY MOTION TO STAY ENFORCEMENT OF
LIMITED EXCLUSION ORDER AND CEASE AND DESIST ORDER**

Douglas E. Lumish
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

Gregory G. Garre
Bert C. Reiser
Gabriel K. Bell
Elana Nightingale Dawson
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2207

September 13, 2017

*Counsel for Appellant Arista Networks, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

    A.    Arista Is Likely To Succeed In This Appeal ..........................................3

    B.    Arista Will Continue To Suffer Irreparable Harm Absent A Stay ........................................................................................................5

    C.    The Remaining Factors Also Clearly Weigh In Favor Of A Stay ........9

CONCLUSION ........................................................................................................11

CERTIFICATE OF INTEREST .............................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Gemstar-TV Guide International, Inc. v. ITC*,
    383 F.3d 1352 (Fed. Cir. 2004) ............................................................... 3

*MCM Portfolio LLC v. Hewlett-Packard Co.*,
    812 F.3d 1284 (Fed. Cir. 2015) ............................................................... 5

*Phigenix, Inc. v. Immunogen, Inc.*,
    845 F.3d 1168 (Fed. Cir. 2017) ............................................................... 9

*Planned Parenthood v. Casey*,
    510 U.S. 1309 (1994) ............................................................................... 6

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*,
    237 F.3d 1359 (Fed. Cir. 2001) ............................................................... 7

*Sampson v. Murray*,
    415 U.S. 61 (1974) ................................................................................... 6

*Standard Havens Products, Inc. v. Gencor Industries, Inc.*,
    897 F.2d 511 (Fed. Cir. 1990) ................................................................. 3

*Texas v. United States EPA*,
    829 F.3d 405 (5th Cir. 2016) ................................................................... 7

## OTHER AUTHORITIES

Douglas Laycock, *The Death of The Irreparable Injury Rule*, 103
    Harv. L. Rev. 687 (1990) ........................................................................ 6

**CONFIDENTIAL MATERIAL OMITTED**

**INTRODUCTION**

When Cisco's unfounded accusations, straw men arguments, and attempts to recharacterize Arista's motion are stripped away, here is where things stand:

(1) The Commission's orders are indisputably based on the premise that Arista has infringed the '577 and '668 patents. If those patents are in fact invalid, the Commission's orders cannot possibly stand.

(2) The PTAB has already held that the '577 and '668 patents *are* invalid. While the PTAB's decisions do not automatically result in the cancellation of those patents (until any appeal has run its course), unless the PTAB's decisions are overturned, the patents *will* be cancelled. The status quo, therefore, is that the patents *will* be canceled, unless the PTAB's decisions are reversed.

(3) Cisco has given no reason to believe it is likely to prevail in its appeals from the *PTAB's decisions* and indeed develops only one argument, which pertains to only one of the two patents at issue and would require this Court to revisit established precedent. If it is likely the PTAB's decisions will be affirmed (and it is), then it is equally likely the Commission's orders will be vacated.

(4) Arista has shown that it will continue to suffer grave and, indeed, irreparable harm from the Commission's orders absent a stay. That harm includes the ▉ of ▉ with its customers due to the significant burdens they now face and the loss of the time and efforts of its senior-most engineers in developing new

and better products for the rapidly evolving networking industry because they must instead spend their time working on redesigns of existing products to avoid the alleged infringement of invalid patents.

(5) In light of all this, Arista has asked this Court to stay the Commission's orders—and prevent further unnecessary harm, in a case where the orders on appeal are at least likely to be vacated—while these appeals proceed.

In an attempt to distract this Court from responding to *that* request, Cisco tries to raise the stakes by arguing that Arista is asking for a "policy" decision that PTAB rulings always trump other rulings. Not so. Arista simply asks the Court to exercise its equitable discretion and determine whether a stay is warranted in the particular circumstances here. What is "truly extraordinary" is not Arista's request for a stay (Cisco Opp. 1), but Cisco's argument that this Court somehow lacks the power to grant a stay in these circumstances. This Court not only has that authority, but it exists for situations just like this.[1]

---

[1] On September 11, 2017, the Commission denied Arista's stay motion, for reasons that mirror the Commission's arguments in this Court. ECF No. 49. A copy of the Commission's order will be submitted when a public version becomes available.

### A. Arista Is Likely To Succeed In This Appeal

Two things cannot be denied. First, if the '577 and '668 patents are invalid, the Commission's orders based on those patents must be vacated; and, second, if the Commission's orders are vacated, Arista will prevail in this appeal.

Cisco nevertheless argues that Arista cannot satisfy the likelihood-of-success factor unless it can show that the Commission's *reasoning* is incorrect. That is incorrect. "An order vacating a judgment" *is* "success on the merits of the appeal." *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 514 (Fed. Cir. 1990). After all, this Court "sit[s] to review judgments, not opinions." *Gemstar-TV Guide Int'l, Inc. v. ITC*, 383 F.3d 1352, 1381 (Fed. Cir. 2004) (citation omitted). Thus, if this Court vacates the Commission's orders—for any reason, including because the underlying patents are invalid—Arista will have succeeded.[2]

Cisco's (at 12) and the Commission's (at 7) argument that the PTAB's decisions are "irrelevant" is thus wholly untenable. Nothing bears more directly on whether the Commission's orders are likely to survive than the fact that the patents on which those orders are based have been found invalid by the PTAB in decisions this Court is likely to affirm. Forcing Arista to wait until this Court *actually affirms* the PTAB's decisions, or the patents are *actually cancelled*, as the

---

[2] The PTAB appeals are well underway and briefing will be complete in November, four months before briefing will be complete here. Also, as companion cases, the appeals likely will be resolved by the same merits panel.

3

Commission and Cisco urge (Comm'n Opp. 6; Cisco Opp. 3, 9), would transform the likelihood-of-success factor into a *certainty-of-success* factor.

The case for a stay is even stronger here than in most cases. Ordinarily, the movant must show that it is likely to overcome an adverse decision. But here, it is *Cisco* that must overcome adverse decisions—the PTAB's decisions. Unless those decisions are overturned, the Commission's orders *will* be vacated.

The same was true in *ePlus, Inc. v. Lawson Software, Inc.*, No. 13-1506, where, contrary to Cisco's assertion (at 11), this Court *did* grant a stay in part, preventing the movant (Lawson) from having "to demonstrate compliance" with the injunction at issue and partially suspending a contempt order pending appeal. Order 1-2, ECF No. 29. There, as here, the PTO had concluded that the patent claim at issue was invalid and that decision was on appeal to this Court. Stay Motion 6, ECF No. 23-2. There, as here, "an affirmance would necessarily render the injunction inoperative, requiring immediate vacatur of the order" under review. *Id.* at 18. And there, as here, the patent holder "put forth no evidence . . . that it lost sales, market share, or profits due to sales of" the allegedly infringing products. *Id.* at 19.[3]

---

[3] Cisco claims that this "Court has twice declined to stay ITC remedial orders based on non-final PTO decisions invalidating the infringed claims." Cisco Opp. 10. But both of the cases it cites involved pre-AIA determinations by the PTO that were subject to further review *within* the agency and thus "non-final."

As this case comes to this Court, the status quo is that the PTAB has concluded that the patents are invalid, and the patents therefore will be canceled *unless* Cisco prevails in its appeals from the PTAB's decisions.[4] And yet, Cisco has given this Court no reason to conclude that it is *likely* to prevail in those appeals. Indeed, apart from wholly conclusory statements, Cisco advances only one argument regarding why the PTAB erred (which concerns assignor estoppel) and that argument relates only to the PTAB's decision finding the '577 patent invalid. Cisco Opp. 12-13. As Arista has explained, however, reviewing the PTAB's assignor-estoppel ruling would require this Court either to reverse en banc or essentially disregard existing precedent—an outcome that is, at the least, *un*likely. And, even so, such a ruling would have no impact on the '668 patent.

Because it is at least likely the PTAB's decisions will be upheld, Arista has plainly shown a likelihood of success in this appeal.

**B.    Arista Will Continue To Suffer Irreparable Harm Absent A Stay**

On irreparable harm, both Cisco and the Commission simply assume that the Commission's orders will be upheld. *See, e.g.*, Cisco Opp. 18. Yet, in gauging

---

*See* Tessera's Sur-Reply 2, *Spansion v. ITC*, No. 2009-1460, et al. (Aug. 4, 2009), 2009 WL 8749541; Emergency Mot. for Stay 13-14, *TVP Tech. v. ITC*, 2009-1386, Dkt. 3 (June 10, 2009). Here, the PTO made a *final* determination of invalidity.

[4] The status quo is also that *inter partes* review is constitutional, per *MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1292-93 (Fed. Cir. 2015), explaining why Cisco's own PTAB appeals have not been stayed pending the Supreme Court's decision on that issue.

irreparable harm, a court must "assum[e] the correctness of [the *movant's*] position"—that is, that the movant will ultimately prevail. *Planned Parenthood v. Casey*, 510 U.S. 1309, 1310 (1994) (Souter, J., in chambers). Thus, Cisco's and the Commission's claims that Arista's harms should be disregarded as the "expected inconveniences of being an adjudged infringer," Cisco Opp. 18; Comm'n Opp. 10, entirely miss the mark.

Next, the Commission and Cisco suggest that harm is only irreparable if it is *catastrophic*. But "[t]he key word . . . is *irreparable*," *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (citation omitted), and "what makes an injury irreparable is that no other remedy can repair it." Douglas Laycock, *The Death of The Irreparable Injury Rule*, 103 Harv. L. Rev. 687, 694 (1990). Thus, "[w]hen determining whether injury is irreparable, 'it is not so much the magnitude but the *irreparability* that counts.'" *Texas v. United States EPA*, 829 F.3d 405, 433-34 (5th Cir. 2016) (emphasis added) (citation omitted).

Here, Arista has explained that it has suffered—and without a stay will continue to suffer—several different injuries that courts have recognized as irreparable, including ███ of ███████ and reputational damage. Mot. 12 (citing cases). Neither Cisco nor the Commission has cited any authority suggesting that this harm is *not* irreparable. Arista has also presented numerous declarations detailing these harms. *See* Sadana Decl. ¶¶ 12, 14, 17-20; HPE Decl. ¶¶ 5, 8, 10;

6

IDT Decl. ¶¶ 7-10; US Internet Decl. ¶ 5; SIX Decl. ¶¶ 4-5; AppNexus ¶¶ 8-9; Wish Decl. ¶¶ 4-7; Jane Street Decl. ¶¶ 4-5; Amobee Decl. ¶¶ 5-6.[5]

Cisco also does not dispute that, due to the Commission's orders, Arista is having to reallocate its best engineers to assist its customers in implementing burdensome redesigns and toward continuing development aimed at addressing the Commission's orders, instead of developing new products to compete in the future. *See* Sadana Decl. ¶¶ 14, 18. That is time and effort Arista will never get back, as it seeks to keep pace in an incredibly competitive marketplace in which technology—and products—are continually being improved. *See Purdue Pharma L.P. v. Boehringer Ingelheim GmbH,* 237 F.3d 1359, 1368 (Fed. Cir. 2001) (loss of market position qualifies as irreparable harm).

Instead, Cisco's main response is to cherry pick statements Arista has made to investors and the public in other contexts. Cisco Opp. 16. But once again, it misses the point. Arista's financial performance to date is largely the result of activity *before* the Commission's orders took full effect. In its most recent SEC report, Arista warned of the significant harm posed by the Commission's orders, explaining that Arista "may not be able to [redesign its switches] in a manner that does not continue to infringe the patents or that is acceptable to

---

[5] Arista withdrew two of those declarations at the request of customers who wish to remain neutral regarding this motion, but numerous declarations detailing Arista's harms remain in the record.

[Arista's customers]." Arista 10-Q at 20 (June 30, 2017), https://investors.arista.com/Financial-Information/SEC-Filings/SEC-Filing-Details/default.aspx?FilingId=1221. Arista further cautioned that the redesign efforts could "be extremely costly and time consuming as well as disruptive to [Arista's] other development activities." *Id.*

Cisco also tries to pin on Arista statements made by supposed "surrogates" or "partner[s]." Cisco Opp. 2, 17. But the quoted individuals—Chris Becerra of Terrapin Systems and Rob Steele of RoundTower Technologies—do not work for or represent Arista in any way. These hearsay statements cannot (and do not) negate the sworn representations of Arista's Chief Customer Officer filed with this Court.

Cisco also argues that Arista is not suffering irreparable harm because it plans to launch "redesigns this month." Cisco Opp. 2 (emphasis omitted). But Cisco ignores the fact that Arista's work does not end with the launch of the redesigns—many months of work remain to assist its customers in implementing these unexpected and undesired new products in their data centers and addressing future problems with them. Cisco also neglects to mention that it accuses the *redesigns* of infringing. Because of Cisco's unrelenting efforts, Arista will continue to endure grave disruptions to its operations and customer ███. The Commission's suggestion that Arista could obtain a license from Cisco is equally

misguided; there is no basis to conclude that Cisco would extend such a license, which presumably explains why Cisco itself does not make this argument.

### C. The Remaining Factors Also Clearly Weigh In Favor Of A Stay

What remains are Cisco's efforts to avoid a stay on the ground that *it* would be harmed if it loses the market advantage it currently enjoys as a result of the Commission's orders enforcing patents that the PTAB has found invalid. Those arguments also crumble on closer inspection.

To begin with, while Cisco is long on rhetoric, it offers no actual evidence that it has lost a single sale, let alone goodwill or business opportunities, because of the sale of Arista's switches—switches that Arista has been selling openly for years. Sadana Decl. ¶ 8. The conclusory assertions in the declaration from Cisco's Director of Product Management merely parrot statements in Cisco's brief and so offer nothing to advance the analysis. *See Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168, 1174-75 (Fed. Cir. 2017). The one sworn statement in the record from a Cisco executive that does specifically address the effect of Arista's sales establishes the exact opposite—that Arista's sales have *not* been hurting Cisco. Ex. 1 at 1126:13-15 ("Q: And Arista's sales have been hurting Cisco, right? A: That's inaccurate.") (945 Trial Tr.—Testimony of Cisco Executive Soni Jiandani).

Cisco also makes much of the fact that the '577 patent will soon expire. But Arista (like every other competitor in the industry) has publicly been using the

9

accused features for many years and long before Cisco initiated the underlying investigation in this appeal. Arista should hardly be faulted for *Cisco's* decision to wait to file a complaint until 2014. In any event, if it prevails in its PTAB appeals, Cisco would still be able to obtain damages regardless of whether a stay is issued. And of course, this argument—like the assignor estoppel argument—has no bearing at all on the '668 patent, which does not expire for eight years.[6]

When it comes to the public interest, Cisco suggests that the U.S. Trade Representative ("USTR") and Commission have preempted a finding by this Court. Not so. For one thing, the USTR considered the public interest in a completely different context. And, in any event, this Court must make its own public interest determination, which is something that other courts, including the D.C. Circuit, routinely do in reviewing stay requests in cases involving agencies.

If there was any doubt about the public interest in granting a stay, the amici companies have answered it. Cisco's cries (at 3) about protecting the rights of "American intellectual property holders" assume that there are valid rights to protect. But here, the very agency that issued the patents in the first place has concluded that they never should have issued. Cisco is of course entitled to appeal

---

[6] The Court could, of course, grant this motion in part and stay the orders with respect to the '668 patent given Cisco's dearth of arguments regarding that patent in particular. While such relief would not ameliorate Arista's irreparable harm entirely, it would *mitigate* that harm because the redesigns for the '577 patent are distinct from the redesigns for the '668 patent.

the PTAB's decisions.  But the only conclusion that can be drawn today is that Cisco is unlikely to succeed in that effort.  And, thus, while these appeals play out, equity cries out for staying the Commission's orders—and preventing the irreparable harm inflicted by those orders on Arista, and the public.

## CONCLUSION

Arista's motion for a stay pending appeal should be granted.

September 13, 2017

Douglas E. Lumish
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

Respectfully submitted,

 /s/ *Gregory G. Garre*
Gregory G. Garre
Bert C. Reiser
Gabriel K. Bell
Elana Nightingale Dawson
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2207

*Counsel for Appellant Arista Networks, Inc.*

11

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Nos. 2017-2289, 2351

CISCO SYSTEMS, INC.
v.
INTERNATIONAL TRADE COMMISSION

ARISTA NETWORKS, INC.

## CERTIFICATE OF INTEREST

Counsel for the Intervenor (No. 17-2289) and Appellant (No. 17-2351) certifies the following:

1. Full Name of Party represented by me:

   Arista Networks, Inc.

2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is:

   Arista Networks, Inc.

3. Parent corporations and publicly held companies that own 10 percent or more of stock in the party:

   None

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   **Latham & Watkins LLP:** Matthew D. Aichele, Dale Chang, Michael A. David, Adam M. Greenfield, Gabriel S. Gross, Julie M. Holloway, Jeffrey G. Homrig, Brian W. Lewis, Ethan Y. Park, Richard L. Pell, Brett M. Sandford, Amy L. Thomas, Thomas W. Yeh, Patricia Young, Nathanial J. McPherson

**Fish & Richardson P.C.**: Frank J. Albert, Michael J. Ballanco, Brian Boyd, Juanita R. Brooks, Ruffin B. Cordell, Robert Courtney, Lauren A. Degnan, John A. Dragseth, Christopher W. Dryer, Thomas S. Fusco, Aleksander Gelberg, David Goren, Kevin Greene (former), Jared M. Hartzman, David J. Healey, Leeron G. Kalay, Steven Katz, Andrew R. Kopsidas, Zachary A. Loney, Xin Ma, Michael J. McKeon, Ralph A. Phillips, Elizabeth G. H. Ranks, Jennifer M. Rea (former), Thomas H. Regar II, Adam R. Shartzer, Christopher G. Smith (former), Seth M. Sproul, Richard A. Sterba, Kevin Su, Michael C. Tyler (former), Ronald Vogel, Markus D. Weyde, Linhong Zhang

**Keker, Van Nest, & Peters LLP:** Brian L. Ferrall, Michael S. Kwun, Elizabeth K. McCloskey, David J. Silbert, Robert A. Van Nest

**Mayer Brown LLP**: Timothy Keeler, Warren Payne, Howard Waltzman

**Tensegrity Law Group LLP**: Paul T. Ehrlich, Robert L. Gerrity, William P. Nelson, Matthew D. Powers, Stefani C. Smith, Jonathan G. Tamimi

**Wilson Sonsini**: Veronica S. Ascarrunz, David H. Reichenberg

Dated:  September 13, 2017

Respectfully submitted,

*/s/ Gregory G. Garre*
Gregory G. Garre
LATHAM & WATKINS LLP
555 11th Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2207

*Counsel for Appellant*

# CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2017, I electronically filed confidential and nonconfidential versions of the foregoing Appellant Arista Networks, Inc.'s Reply Regarding Emergency Motion to Stay Enforcement of Limited Exclusion Order and Cease and Desist Order with the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the CM/ECF system.

I further certify that on this same day copies of the confidential version of the foregoing Appellant Arista Networks, Inc.'s Reply Regarding Emergency Motion to Stay Enforcement of Limited Exclusion Order and Cease and Desist Order were served on counsel for all parties via email as listed below.

Megan M. Valentine
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
megan.valentine@usitc.gov

John C. O'Quinn
Kirkland & Ellis LLP
655 15th Street, NW
Washington, DC 20005
john.oquinn@kirkland.com

/s/ Gregory G. Garre
Gregory G. Garre

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing reply complies with the type-volume limitations in Federal Rule of Appellate Procedure 27(d)(2)(C). According to the word count feature of Microsoft Word, the reply contains 2,564 words, excluding the exempted parts under Rule 32. The reply has been prepared in a proportionally spaced typeface using Times New Roman in 14 point size.

Respectfully submitted,

 s/ *Gregory G. Garre*
Gregory G. Garre

September 13, 2017

# CERTIFICATE OF COMPLIANCE WITH RULE 27(m)

I hereby certify that the foregoing reply complies with the limitations set forth in Federal Circuit R. 27(m) and contains 1 word (including numbers) marked as confidential that was not already marked confidential in Arista's motion, Cisco's response and the Commission's response. The material marked confidential in this reply is confidential business information.

                                                Respectfully submitted,

                                                *s/ Gregory G. Garre*
                                                Gregory G. Garre
                                                *Counsel for Appellant Arista Networks, Inc.*

September 13, 2017